NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## THOMAS DUTTON, PETITIONER, v. FRANK SCANLON AND MICHAEL OWENS, RESPONDENTS.

Injury to Employe Caused by Falling Into a Coal-Chute While Carrying a Large Can of Ashes—Question of Medical Services, Extent of Temporary Disability and Extent of Permanent Disability—Much Testimony Offered on Both Sides and Reviewed at Length Here.

For the petitioner, *William Horda Smith.*

For the respondents, *Harry E. Walburg.*

\*    \*    \*    \*    \*    \*    \*    \*

2. Petitioner proved that he was injured in an accident arising out of and in the course of his employment on January 13th, 1926, with the respondents, and received $20 per week. He testified that he received temporary disability up to March 26th, 1926, from the date of the accident.

3. The only question involved was the medical question, as to how much longer he was entitled to temporary disability and as to whether there was any permanent disability. The petitioner testified that he was carrying out ashes from his place of employment with respondents, and was carrying out a can of ashes weighing about sixty pounds, and was crossing a sidewalk when a coal-chute cover on which he stepped slipped and became out of place. As a result of this, petitioner fell through the coal-chute, and while he was in the act of falling he clung to the can of ashes and found himself with his two legs in the coal-chute below the surface of the sidewalk and the rest of his body above the surface of the sidewalk. He testified that he hurt his left knee when he fell and injured his chest, and at the present time he is suffering from pains in the chest, pains in the left shoulder and pains in the left hand. He also said that he is unable to grasp anything with the left hand, and that since the time

of the accident up to the present time he has been unable to work, and during that time he has lost twenty-eight pounds. He states that he suffers from attacks of dizziness, insomnia, nervousness and weakness. He testified that he was treated by Dr. Coffey, who treated him from the time immediately following the accident up to the present time, and X-ray pictures taken by Dr. Hood of the City Hospital of Newark, on March 17th, April 9th, April 16th, May 9th, 1926, showed the lateral view of the chest, and it indicated a fracture of the sternum or breast bone, and the latter fragment of the chest bone was bent forward. Another picture showed evidence of a fracture at the base of the meta-carpal of the thumb of the left hand, and there was also evidence of an old fracture of the thistle and the latter, Dr. Hood stated, was evidently an old fracture. Another picture showed a sprained fracture of cronium process of the scapula. The doctor stated that the pictures indicated that the bone is chipped off and is irregular in shape. This seems to corroborate with petitioner's statement in respect to pains from these very same regions in which Dr. Hood found fractures.

4. Dr. Coffey said that had been treating the petitioner since the date of the accident up to the present time, and he corroborates petitioner in so far as the symptoms were concerned, and stated that he had looked at the pictures taken by Dr. Hood and they corroborated his findings. He said that he knew petitioner before this accident, and the petitioner was an athletic type and always appeared to be in good health, but since the accident he has declined considerably and lost weight. Dr. Coffey further testified that he was satisfied that there was permanent disability of the left shoulder; there was disability of the left hand approximately thirty-five per cent., and taking these conditions in consideration, together with the condition of the chest, the fact that he lost weight, the fact that he was nervous and that he could not sleep, and that he complains of general pains throughout his body, he felt that petitioner was thirty to thirty-five per cent. total permanently disabled.

5. Petitioner said that before this accident he was able to lift beer barrels in the course of his employment, and always did hard work and always was in good physical condition.

6. The respondents introduced the fact that about a year ago Mr. Dutton, the petitioner, was in an automobile accident, but I cannot give that much weight, because there was no testimony before me that he was seriously injured or that he was injured at all—in fact, Dr. Coffey testified that he recalled the accident and that there was absolutely no injuries to petitioner as a result of that accident.

7. The testimony of the respondents further showed that he was treated by Dr. Szerlip from January 15th to February 9th, 1926, for injuries to his left knee, left hip and chest. Dr. Szerlip testified that at the time he examined him he complained of injuries to his left knee, hip and chest, and it is evident that Dr. Szerlip would have treated him for a longer period of time. Further, then, that Dr. Szerlip testified on cross-examination that it was his intention to have an X-ray picture of the chest taken, and this X-ray was not taken because the petitioner did not return to him for any further treatment. Dr. Szerlip also testified that the petitioner did not complain of any injury to his left hand or shoulder while under his treatment.

8. Dr. Bull testified for the respondent that he treated the petitioner from February 24th to April 3d, 1926. The petitioner complained of injuries to his left knee, left hip and chest when he first came to be treated. Two weeks later he complained of pain in his left hand, which was swollen. Dr. Bull diagnosed this condition as rheumatism. No complaint was made of injury to the left shoulder. On February 24th, 1926, an X-ray picture of the petitioner's chest was taken by Dr. Bull and was offered in evidence by the respondent.

9. Dr. Sanlow testified for the respondent that he treated the petitioner at the City Hospital from March 28th to March 31st, 1926. The petitioner complained of pain in his left hand and chest. He was discharged on March 31st, 1926.

10. Dr. Krueger testified for the respondent that he treated

the petitioner the first time he came to Dr. Szerlip's office. The petitioner complained of injuries to his left knee, left hip and chest. No complaint was made of any other injuries.

11. Dr. Brothers, who was called by the respondents, testified that there was no permanent injury, but I cannot reconcile this testimony with the nature of the accident, with the X-ray pictures produced by the petitioner and the testimony of the petitioner's doctors who saw him and treated him from the time of the accident to the present time. Dr. Brothers merely made a physical examination of him a week or two ago. Dr. Brothers and Dr. Szerlip, after examining the X-rays introduced by the petitioner and the respondent, testified that, in their opinion, there was a displacement and not a fracture of the ensiform, but that the position of the ensiform did not interfere with any organs, and that it was an old condition. They also testified that from an examination of the X-rays, it was their opinion that the fractures of the left thumb and left shoulder were old ones. They also testified that a fracture of the meta-carpal bone would cause swelling and pain immediately after the accident, and that a sprained fracture of the cronium process would also cause severe pain and very likely an injury to the ligaments of the shoulder.

12. I feel that Dr. Brother's opinion in respect to the percentage of disability is low, and I also feel that Dr. Coffey's opinion as to the percentage is somewhat high. I am, however, inclined to believe that there is a fairly substantial total permanent disability. As a result of my findings I hereby determine that the petitioner is entitled to fifteen per cent. total permanent disability, which amounts to seventy-five weeks at the rate of $13.33 per week, and the petitioner is also entitled to temporary disability from March 26th, 1926, to July 7th, 1926, at the rate of $13.33 per week.

The attorney for the petitioner is entitled to receive his counsel fee payable by the respondents in the amount of $150, the amount agreed upon by the respective attorneys,

and $50 counsel fee to be paid by the petitioner in the preparation for trial and his appearances and actual trial in the above-entitled matter.

\*     \*     \*     \*     \*     \*     \*     \*

HARRY J. GOAS,
*Deputy Commissioner.*